**YANNI LAW, APC**
John C. Bohren (California State Bar No. 295292)
145 S Spring St; #850
Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779


**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre Bèlanger (*Pro Hac Vice Forthcoming*)
Andre.Belanger@poulinwilley.com
Antonio A. Cifuentes Jr. (*Pro Hac Vice Forthcoming)*
Tony.Cifuentes@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536


*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kamonica McWhite-York individually and on behalf of all others similarly situated,<br><br>                              Plaintiff<br><br>          v<br><br><br>Foster Farms, LLC.<br><br>                              Defendant | **Case No:**<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

1

# CLASS ACTION COMPLAINT

Plaintiff Kamonica McWhite-York ("Plaintiff") brings this Class Action Complaint against Defendant Foster Farms, LLC ("Foster" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Kamonica McWhite-York is a resident citizen of Florence, South Carolina. Plaintiff is a purchaser of The Foster Farms Company's Corn Dogs.

2. Defendant, Foster Farms LLC., is incorporated in California with its principal place of business in Livingston, California. The Defendant's Registered Agent for Service of Process is CT Corporation. CT Corporation has an office in Glendale, California.

3. On October 4, 2025, Foster Farms announced a recall of its Chicken and Turkey Corndogs on a stick after the discovery of wood within the batter[1].

4. According to public news reports, the Defendant is recalling 3.8 Million pounds of their chicken/turkey corn dog products because of this contamination hazard[2].

5. The contaminated products were believed to have been produced between July 30, 2025, and August 4, 2025[3].

---

[1] https://www.fosterfarms.com/news/voluntary-recall-initiated-for-select-corn-dogs-products/
[2] https://www.nbcnews.com/health/recall/foster-poultry-farms-recalls-nearly-4-million-pounds-chicken-corn-dogs-rcna235847
[3] https://www.nbcnews.com/health/recall/foster-poultry-farms-recalls-nearly-4-million-pounds-chicken-corn-dogs-rcna235847

6. According to the USDA Recall Notice, the affected product will have "P-6137 B" marked either on the inside of the USDA mark of inspection or printed elsewhere on the packaging[4].

7. According to a public news source, there have been numerous complaints, and 5 reported injuries attributed to this contamination[5]. These complaints and injuries were also referenced in the USDA Recall Notice[6].

8. Foster Farms posted news concerning the recall on its website. Glaringly absent is an offer to reimburse consumers for purchasing their contaminated food product[7].

9. The Defendant publicly markets itself on its website as providing a healthy source of food and nutrition. For example, on its website they assert that their foods are "minimally processed, no artificial ingredients[8]."

10. On another web page they assert they "believe in healthy eating" and they "turn healthy eating into joyful eating"[9].

11. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

---

[4] https://www.fsis.usda.gov/recalls-alerts/foster-poultry-farms-llc-recalls-chicken-corn-dog-and-ground-turkey-a-stick-products
[5] https://www.azfamily.com/2025/10/06/nearly-4-million-pounds-foster-farms-corn-dogs-recalled-wood-contamination-concerns/
[6] https://www.fsis.usda.gov/recalls-alerts/foster-poultry-farms-llc-recalls-chicken-corn-dog-and-ground-turkey-a-stick-products
[7] https://www.fosterfarms.com/news/voluntary-recall-initiated-for-select-corn-dogs-products/
[8] https://www.fosterfarms.com/
[9] https://www.fosterfarms.com/our-story/

3

12. This Court has personal jurisdiction over Defendants under 28 USCS § 1391 because Defendants conduct substantial business in the United States, including the manufacture, marketing, distribution, and sale of the corn dog and sausage products that are the subject of this action.

13. Venue is proper under 28 U.S.C §1391 because Defendant Foster Farms maintains facilities in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the distribution and sale of the recalled products and Defendants have sufficient contacts with this District such that the exercise of jurisdiction is reasonable and just.

## FACTUAL ALLEGATIONS

14. On October 4, 2025, the U.S. Department of Agriculture's Food Safety Inspection Service ("FSIS") announced that Defendant Foster Farms was recalling approximately 3,800,000 pounds of chicken and turkey corn dogs on a stick product.[10]

15. The brands subject to recall are under the "Foster Farms" label. The Defendant's name appears on the packaging as the manufacturer of the products.

16. FSIS stated that the recalled products were potentially contaminated with extraneous material, specifically pieces of wood embedded in the batter[11].

17. The recalled products were manufactured and packaged between July 30, 2025, and August 4, 2025. A list of impacted products and product labels was published by FSIS and Foster Farms in connection with the recall.[12]

---

[10] https://www.fsis.usda.gov/recalls-alerts/foster-poultry-farms-llc-recalls-chicken-corn-dog-and-ground-turkey-a-stick-products
[11] Id.
[12] https://www.fsis.usda.gov/sites/default/files/media_file/documents/Recall_031_2025_Food_Products_List.pdf

18. The products subject to recall bear establishment number "P-6137B" either inside the USDA mark of inspection or printed on the packaging. These items were shipped to retail and institutional locations nationwide, including Department of Defense and USDA Commodity Foods donations[13].

19. FSIS reported that the recall was initiated after Foster Farms received multiple consumer complaints, at least five of which involved injuries. Foster Farms/ USDA investigation determined that wooden sticks had entered the production process prior to battering, resulting in the contamination[14].

20. The problem was discovered after FSIS received a consumer complaint involving an injury from consumption of these products. Additionally, the Defendant received multiple consumer complaints, 5 of which involved injuries[15].

21. FSIS expressed concern that recalled products remain in consumer homes, schools, and institutions, and has warned consumers not to consume the affected products but to discard or return them[16].

22. Plaintiff is a resident and citizen of South Carolina who has a history of purchasing Foster Farms Corn Dogs. She regularly buys the product deeming it to be a heathy afternoon snack for herself and her family. She advises making purchases at major retail stores such as Walmart, Food Lion, IGA and elsewhere. She also reports purchasing for delivery on the Walmart App as well.

---

[13] https://www.fsis.usda.gov/recalls-alerts/foster-poultry-farms-llc-recalls-chicken-corn-dog-and-ground-turkey-a-stick-products
[14] Id.
[15] Id.
[16] Id.

23. Plaintiff was advised of the recall through the Walmart app as they had records of her purchasing Foster Farms Corn Dogs.

24. Plaintiff was forced to purchase, store, and ingest a product that has now been declared adulterated, unsafe, and unfit for human consumption by federal regulators. The product Plaintiff purchased and consumed, like all recall products, either contained or was at risk of containing foreign objects unfit for human consumption.

25. As a result of Defendant's conduct, Plaintiff and the Putative Class Members suffered economic loss, including but not limited to the purchase price of the recalled products, and have been deprived of the benefit of their bargain. No consumer would purchase the products knowing they contained or were at risk of containing foreign objects that ordinarily should not be consumed.

26. The contamination of the recalled products was sufficiently widespread as to possibly affect any given unit of the recalled products, including the product purchased by Plaintiff.

27. Given the scale of the recall and the inherent impossibility for an individual consumer to determine whether their particular product was contaminated, every unit subject to recall, including Plaintiff's purchase, was plausibly affected by the defect.

28. As a result, the economic benefit Plaintiff and Class Members received was less than the price they paid for the recalled products. Plaintiff and Class Members purchased food products represented as fit for human consumption. Instead, they received adulterated, unsafe, and worthless products that should be discarded, offering no value or benefit relative to their purchase price. And, indeed, exposed them to health risks.

29. Plaintiff and Class Members suffered economic loss because they paid for products that had no value, resulting in a total failure of consideration and loss of the benefit of the bargain.

30. Defendant failed to adequately design, manufacture, test, inspect, and monitor the production process of the recalled products, allowing contaminated food to enter the stream of commerce on a massive scale.

31. Defendant also failed to warn consumers in a timely and adequate manner, instead allowing adulterated products to remain on shelves and in consumer homes for months before a recall was announced.

32. Defendant's recall, standing alone, is an insufficient remedy.

33. At this time, there is no recall remedy in place. Rather, consumers are advised to either discard or return recalled items to the store of purchase. This is no remedy at all.

34. Even if a refund were offered, the remedy would be inadequate for many, if not most class members. Defendant is aware that most consumers purchase the products at multiple locations and do not maintain receipts for consumable goods. As such, most consumers cannot receive refunds at the location of purchase.

35. Also, many consumers and Class Members have already consumed the Product.

36. Additionally notice of the recall was not specifically targeted to reach customers of the products. Unlike class notice (which is designed to reach the majority of class members), Defendant has not conducted a widespread advertising campaign or provided direct notice to known purchasers.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the

7

class and subclass are defined as follows:

**All persons within the United States who purchased Foster Farms chicken or turkey corn dogs on a stick product that were subject to the October 4, 2025, recall (including products bearing establishment numbers "P-6137B" manufactured and packaged between July 30, 2025, and August 4, 2025)**.

38. This Nationwide Class shall be referred to herein as the "Class."

39. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

40. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

41. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and agents and from major retail sellers.

42. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43. The proposed Class is so numerous that the joinder of all members is impracticable.

44. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

45. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown currently, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Nevertheless, the numerosity of the class is such that it is capable of purchasing 58,000,000 pounds of the recalled food products.

46. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

47. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing a hazard of possibly consuming a foreign object by eating the recalled products. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

48. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that

predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

49. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendants will be allowed to profit from their unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendants may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

50. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant manufactured, marketed, and sold food products that were contaminated with foreign materials, specifically wood pieces embedded in the batter;

b. Whether the recalled products were manufactured defectively or otherwise unreasonably dangerous for their intended use;

c. Whether Defendant knew or should have known of the risk of contamination in their products;

d. Whether Defendant failed to exercise reasonable care in the design, manufacturing, testing, marketing, and distribution of the recalled products;

e. Whether Defendant violated federal or state consumer protection statutes and food safety laws by distributing adulterated or contaminated products into interstate commerce;

f. Whether Defendant's acts and omissions constitute breaches of express and/or implied warranties;

g. Whether Defendant was unjustly enriched by the sale of the recalled products;

h. Whether Plaintiff and Class Members are entitled to damages, restitution, disgorgement, or other relief;

i. Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief, including enhanced safety testing, consumer warnings, and recall remedies; and.

j. The appropriate measure of damages or restitution owed to Plaintiff and Class Members.

## CAUSES OF ACTION

### COUNT I

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

51. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

52. Cal Civ. Code 179.1 establishes an implied warranty of merchantability and fitness.

53. The implied warranty of merchantability requires products to be fit for the ordinary purpose for which the goods are used. In this case, the ordinary purpose of a corn dog is serving as food safe for human consumption. Having pieces of wood contaminating the batter in the corn dogs renders the product unfit for human consumption and, as such, not fit for its ordinary use.

54. Implied warranty of fitness means (1) that when the retailer, distributor, or manufacturer has reason to know any particular purpose for which the consumer goods are required, and further, that the buyer is relying on the skill and judgment of the seller to select and furnish suitable goods, then there is an implied warranty that the goods shall be fit for such purpose.

55. In this case, the Defendant had reason to believe, by the nature of the product and the Defendant's marketing activities, that the corn dogs subject to recall's purpose was food for human consumption. Plaintiff, and Class Members could reasonably rely upon the Product's packaging and public website to believe they were purchasing a safe food product for consumption. Having the batter contaminated with wood pieces renders the food unfit for human consumption and unsuitable.

56. As stated elsewhere within this complaint, according to the USDA Recall, pieces of wood were embedded in the batter of the recalled food products making the food contaminated and defective at the time of sale.

57. Defendants are merchants and were at all relevant times involved in the distributing, warranting, and/or selling of the contaminated pounds of chicken and turkey corn dogs on a stick products.

58. The recalled products are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the recalled products, as goods, were purchased.

59. Defendant entered into agreements with consumers to sell chicken and turkey corn dog on a stick product to be consumed by Plaintiff and Class Members.

60. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

61. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendants' warranties and sales. Defendants' warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

62. More specifically, in cases involving foodstuffs, California courts have consistently held that an implied warranty of fitness for human consumption runs from the manufacturer or seller to the ultimate consumer, regardless of privity of contract. See *Klein v. Duchess Sandwiches Co.*, 14 Cal. 2d 272 (1939).

63. Defendants have sufficient notice of their breaches of implied warranties associated with the recalled products through their review of consumer complaints as well as their own recall.

64. Had Plaintiff, Class Members, known about this defect, they would have not purchased them and, instead, would have purchased a similar product from a competitor or they would have paid less.

65. As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

66. Plaintiff suffered injury in that he purchased a product that is not fit for human consumption due to an unreasonably high probability of contamination with a foreign material in the products batter.

67. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT II

## UNJUST ENRICHMENT

68. Plaintiff incorporates the allegations set forth in the previous aforementioned paragraphs as though set forth fully herein.

69. Plaintiff pleads the equitable remedy of "unjust enrichment" or "restitution" as an alternative remedy should the Court deem there was no contract between the Plaintiff and Defendant. See *Sepanossian v. National Ready Mix Co.*, 97 Cal. App. 5th 192 (Cal. 2nd. 2023).

70. Defendant should not be able to retain monies received for selling Plaintiff and Class Members food products in which there is an unreasonably high risk of finding wood in the products because wood was found inside the batter used to make the corn dogs.

71. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendants by purchasing the potentially contaminated recalled products. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe, reliable and made for human consumption.

72. The Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and the contaminated foods without adequate warnings of the known defect.

73. The benefit was obtained unlawfully by Defendant distributing products not fit for human consumption. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

74. Defendant received revenues from the sales of these contaminated products at the expense of Plaintiff and the Class, who would not have purchased the chicken or turkey corn dogs on a stick products had they been aware of risk of contamination.

75. Defendant has been unjustly enriched by retaining the revenues derived from the sales of the potentially contaminated products. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with its products, thereby misleading consumers and endangering their safety.

76. Plaintiff and the members of the Class seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of potentially contaminated products and provide restitution to Plaintiffs and the Class, as ordered by the Court.

## **DEMAND OF TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted

herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Respectfully submitted,

By: */s/ John C. Bohren*

**YANNI LAW APC**
John C. Bohren (California State Bar No. 298476)
145 S Spring St; #850 Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779
Email:Yanni@bohrenlaw.com

AND

Andre R. Belanger (*Pro Hac Vice forthcoming*)
Antonio A. Cifuentes Jr. (*Pro Hac Vice Forthcoming)*
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: andre.belanger@poulinwilley.com
　　　Tony.cifuentes@poulinwilley.com
　　　cmad@poulinwilley.com